## S11A1910. FOSTER v. THE STATE.
### (723 SE2d 663)

BENHAM, Justice.

Appellant Andrew Markus Foster was convicted of the felony murder of Waylon George, with conspiracy to commit armed robbery as the underlying felony, and sentenced to life imprisonment.[1]

The State presented evidence that the victim died in the parking lot of an Acworth apartment complex as a result of a single gunshot wound to his left chest that struck several vital organs and caused extensive internal bleeding. A visitor to the complex heard the gunshot and saw a white sports utility vehicle drive away and the victim sprawled on the ground. A woman who drove the victim to the place where he was shot testified that a white SUV occupied by two

---

[1] The victim was killed on February 26, 2005, and the Cobb County grand jury returned a true bill of indictment in May 2005 that charged appellant and two others with malice murder, felony murder (aggravated assault), felony murder (conspiracy to commit armed robbery), aggravated assault, and conspiracy to commit armed robbery. Appellant was tried November 28-December 1, 2005, and was found guilty of all charges save malice murder, on which charge the trial court directed a verdict of acquittal. The judgment of conviction was reversed by this Court in *Foster v. State*, 283 Ga. 484 (660 SE2d 521) (2008). The convictions of appellant's co-indictees, Travis Wilson and Lanny Frazier, who were tried together, were affirmed by this Court in *Wilson v. State*, 285 Ga. 224 (675 SE2d 11) (2009). Following the reversal of appellant's convictions, the Cobb County grand jury returned a superseding indictment that charged appellant with the same crimes with which he was charged in 2005, with the exception of malice murder. Appellant's re-trial took place October 13-16, 2008, and he was found guilty of all counts. On October 17, 2008, the trial court sentenced appellant to life imprisonment for felony murder with conspiracy to commit armed robbery as the underlying offense, vacated the second felony murder conviction, and merged the remaining convictions as a matter of fact. Appellant's motion for new trial was filed on October 17, 2008, was amended on December 17, 2010, and was the subject of a hearing on December 17, 2010. The trial court denied the amended motion on December 17, and a timely notice of appeal was filed on January 14, 2011. The appeal was docketed in this Court to the September 2011 term of court, and argument was heard on November 21, 2011.

men had parked next to her car in the complex's parking area, that the victim told her the SUV's passenger had asked him if he was waiting for "Don Juan," that the victim exited the car to throw away trash, and that the SUV's passenger shot the victim with a rifle. The woman also testified that the victim had received several phone calls as they drove to the apartment complex and that the victim had told her the calls were from appellant. Just before arriving at the complex, the victim called a man known as "Don Juan" and told him he would reach the complex in a few minutes. "Don Juan" testified he had arranged to meet the victim in the complex in order to sell him cocaine, and had told appellant about his plans to meet the victim.

When questioned by police in a recorded interview, appellant stated that he had sent his co-indictees, Travis Wilson and Lanny Frazier, to meet the victim in the apartment complex and to rob him by selling him powdered wallboard as cocaine. Appellant told the investigating detectives that the co-indictees had shot the victim instead of robbing him. A man who shared a jail cell with appellant in the Acworth City Jail testified that appellant told him that appellant had sent two young men to rob the victim, that they had carried a Ruger Mini 14 with them, and had fatally shot the victim. A .223-caliber shell casing was found near the victim, and a firearms expert testified that a Ruger Mini 14 was designed to fire a .223-caliber cartridge. The cellular phone records of the victim, appellant, "Don Juan," and one of the co-indictees corroborated the testimony summarized above and indicated that appellant and the co-indictee had been in touch telephonically at least sixteen times the day the victim was killed, including phone calls placed shortly before and after the victim was killed.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of felony murder with conspiracy to commit armed robbery as the underlying felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial judge violated OCGA § 17-8-57 when the trial judge gave a pre-evidentiary charge to the jury which contained the statement that "the State will introduce evidence in support of the charges contained in the indictment." OCGA § 17-8-57 labels it reversible error for a judge "to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." Appellant asserts that the trial judge, in giving the charge, gave support to the State's contention that there was evidence to support the ultimate issue of whether appellant was guilty of the charges against him. This Court addressed the same attack on the same pre-evidentiary charge in *Cook v. State*, 255 Ga. 565 (3) (340 SE2d 843) (1986). In *Cook*, we noted that the instruction

was part of an explanation of the stages of the trial and did not constitute error, opining that "to say that the state will offer evidence 'in support of the charges' is not to predict that the state's evidence will *establish* the charges. . . ." (Emphasis in original.) Id. More recently, we stated that judicial comments "limited to a clarification of procedures and [which] did not address the credibility of witnesses or any fact at issue in the trial" do not violate OCGA § 17-8-57. *Linson v. State*, 287 Ga. 881 (2) (700 SE2d 394) (2010). The trial judge's statement did not violate OCGA § 17-8-57.

3. Appellant next contends that an incriminating statement made by appellant during a custodial interrogation should have been suppressed as involuntarily made since it was induced by hope of benefit. See OCGA § 24-3-50. Appellant recognizes that we ruled adversely to him on this issue in his first appeal (*Foster v. State*, supra, 283 Ga. 484 (2)), and contends we erred in doing so. However,

> [w]here, in a case previously brought to this court, error in the admission of incriminatory statements and confessions as not having been free and voluntarily made was alleged, and a ruling was made thereon; and where the same question is again raised in the same case, upon its second appearance in this court, and it appears that on the second trial the evidence as to the circumstances under which the admissions and confessions were made was substantially the same as on the first trial, the ruling of this court in its first decision is "the law of the case," and a final adjudication of such question.

*Bryant v. State*, 197 Ga. 641, hn. 1 (30 SE2d 259) (1944). See also *Roulain v. Martin*, 266 Ga. 353 (1) (466 SE2d 837) (1996) (both the habeas court and this Court are bound by this Court's ruling in the inmate's direct appeal of his criminal conviction, "regardless of whether that ruling may be erroneous"). Appellant asserts that "the law of the case" is not applicable to this appeal because it is not the same case in which the earlier ruling was made since appellant's first appeal arose from a different indictment than the indictment on which appellant's second trial was based, and included charges not tried in the second appeal.[2] We disagree with appellant's premise. It is not the indictment number that controls the applicability of "law of the case." Rather, what is controlling is the fact that the same issue was litigated and decided in a prior proceeding between the

---

[2] Appellant having been acquitted in his first trial of malice murder by the grant of a directed verdict of acquittal, he was not charged with malice murder in the superseding indictment on which appellant was tried in his second trial.

same parties. See *State v. Lejeune*, 277 Ga. 749 (3) (B) (594 SE2d 637) (2004). See also *Smith v. United States*, 406 A2d 1262 (D.C. 1979). Compare *State v. Mizell*, 288 Ga. 474 (3) (705 SE2d 154) (2010) (issues of constitutional materiality and whether the State acted in bad faith were not put in issue and were not decided by the grant of a new trial); *Slakman v. State*, 280 Ga. 837 (2) (c) (632 SE2d 378) (2006) (footnote in earlier opinion of this Court mentioning that the record indicated the jury had left the courtroom did not constitute a "ruling" so as to be binding on subsequent proceedings in this Court).

4. Lastly, appellant contends it was error to admit testimony concerning an out-of-court statement made by one of his co-indictees before the State proved the existence of a conspiracy between appellant and the declarant. See OCGA § 24-3-5 ("After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."). However,

> the State is not required to prove the existence of the conspiracy before a co-conspirator's statement can be admitted. Instead, the trial court has the discretion to permit the State to admit the testimony regarding the co-conspirator's statement so long as the State ultimately proves the existence of the conspiracy during the course of the trial.

*Purvis v. State*, 273 Ga. 898 (2) (548 SE2d 326) (2001). See also *Isaac v. State*, 269 Ga. 875 (6) (505 SE2d 480) (1998). Since there was evidence that appellant and his co-indictees engaged in a conspiracy to rob the victim, the trial court did not abuse its discretion in admitting the co-conspirator's statement.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 27, 2012.

*Michael H. Saul*, for appellant.

*Patrick H. Head, District Attorney, Jesse D. Evans, John R. Edwards, Amelia G. Pray, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.