**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 2, 2022**

# In the Court of Appeals of Georgia

A22A1407. MASSINGILL v. THE STATE.

REESE, Judge.

A jury found David Lee Massingill guilty of stalking.[1] The trial court denied Massingill's motion for new trial, and he appeals. Massingill contends that (1) his trial counsel provided ineffective assistance, (2) the trial court erred in denying his motion for directed verdict, (3) the trial court erred in failing to strike a potential juror for cause, (4) the prosecutor committed misconduct during her closing argument, and (5) the cumulative effect of these errors deprived Massingill of a fair trial. For the reasons set forth infra, we affirm.

---

[1] See OCGA § 16-5-90 (a) (1).

Viewed in the light most favorable to the jury's verdict,[2] the record shows that Massingill and S. C. began a relationship in 2000 and began living together in 2009. After they began living together, Massingill became verbally abusive. He also threatened S. C., pushed her, and put his hands around her throat. S. C. was afraid to leave Massingill because she did not know what he would do to her. However, in May 2019, S. C. moved out.

After their breakup, S. C. purchased a new house, but Massingill found it. S. C. saw Massingill intermittently and stayed in contact with him in order to keep the peace. In January 2021, S. C. stopped responding to Massingill's text messages and phone calls and cut off all contact with him. She confided in her preacher that she was afraid of Massingill.

On January 26, 2021, S. C. was attending church services when Massingill arrived at the church. Two members of the congregation who provided security, including monitoring the parking lot, observed Massingill underneath S. C.'s vehicle. Another member of the congregation then discovered a GPS tracking device underneath S. C.'s vehicle. S. C. testified that she felt terrified when she learned that a tracking device had been installed underneath her car without her knowledge.

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

As set forth above, a jury found Massingill guilty of stalking, and the trial court denied his motion for new trial. This appeal follows.

In reviewing Massingill's claim of ineffective assistance of counsel, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[3] With these guiding principles in mind, we now turn to Massingill's specific claims of error.

1. Massingill argues that his trial counsel provided ineffective assistance in several respects.

To evaluate Massingill's claims,

> we apply the two-pronged test established in *Strickland v. Washington*,[4] which requires him to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Importantly, should a defendant fail to meet his burden on one prong of this two-prong test, we need not review the other prong. In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this

---

[3] *Hall v. State*, 361 Ga. App. 568, 571 (865 SE2d 183) (2021) (punctuation and footnote omitted).

[4] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

3

presumption. In fact, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[5]

(a) Massingill contends that his trial counsel was ineffective when he failed to object to juror R. P. and failed to strike potential juror M. C. for cause.

"Which, and how many, prospective jurors to strike is a quintessential strategic decision."[6]

During voir dire, R. P. indicated that in 2006 or 2007, her husband had been charged with domestic violence and had accused her of falsifying documents, but that he was later found to have falsified documents. She ultimately served on the jury. Because R. P. expressed no fixed opinion as to Massingill's guilt or innocence, showed no bias, and confirmed that she could listen fairly and objectively to the

---

[5] *Hall*, 361 Ga. App. at 573-574 (3) (punctuation and additional footnote omitted).

[6] *Barmore v. State*, 323 Ga. App. 377, 381 (2) (746 SE2d 289) (2013) (citations and punctuation omitted).

4

testimony, Massingill has not shown that trial counsel was deficient in failing to object to R. P. serving as a juror.[7]

As to potential juror M. C., she disclosed during voir dire that, 20 years earlier, her ex-husband had tried to hire a hit man. Defense counsel used a peremptory challenge to strike her. At the hearing on the motion for new trial, defense counsel testified that he did not want M. C. to serve on Massingill's jury, but he saw no reason to strike her for cause. Counsel also explained that using a peremptory challenge to strike M. C. did not prevent him from striking any other potential jurors he wished to keep off of the jury. When defense counsel fails to strike a potential juror for cause, but uses a peremptory challenge to strike the same juror, and the defendant has not shown that any challenged juror who served was unqualified, the defendant has failed to show any reasonable probability that the outcome of the case

---

[7] See *Veal v. State*, 301 Ga. 161, 164 (2) (a) (800 SE2d 325) (2017) (rejecting defendant's claim of ineffective assistance when the jurors at issue had expressed no fixed opinion nor bias and confirmed that they could be fair and impartial, despite their customer relationship with bank that had been robbed).

would have been different but for counsel's alleged deficiency.[8] Accordingly, this claim of ineffective assistance of counsel also fails.[9]

(b) Massingill next contends that his trial counsel improperly advised him regarding his right to testify and failed to object to possible impeachment evidence.

"A criminal defendant has a constitutional right to testify in his or her defense, that right is personal to the defendant, and the decision whether to testify is made by the defendant after consultation with counsel."[10] "Defense counsel bears the primary responsibility for advising the defendant of his right to testify and the strategic implications of this choice, as well as for informing the defendant that the decision whether to testify is his to make."[11] Counsel's advice "is crucial because in the absence of an intentional relinquishment or abandonment of a known right or privilege, there can be no effective waiver of a fundamental constitutional right."[12]

---

[8] *Welbon v. State*, 304 Ga. 729, 732 (2) (822 SE2d 277) (2018).

[9] See id.

[10] *State v. Nejad*, 286 Ga. 695, 696 (1) n. 2 (690 SE2d 846) (2010).

[11] *Thomas v. State*, 282 Ga. 894, 896 (2) (b) (655 SE2d 599) (2008).

[12] Id. (citations and punctuation omitted).

On the first day of trial, Massingill announced through counsel that he intended to testify, and the trial court instructed Massingill that he had an absolute right to testify and that it was his right, not counsel's, to decide whether to testify. Following a further colloquy with the court, Massingill informed the court that he wished to testify, and the court found that he had been properly advised of his rights and that, with a full understanding of those rights, he had elected to testify.

After Massingill elected to testify, the State disclosed possible impeachment evidence, including evidence that Massingill had falsely reported a co-worker for sexual harassment. Defense counsel argued against the admissibility of the possible impeachment evidence, and the court announced that it would reserve ruling on admissibility unless and until Massingill testified. The court then recessed for the day so that Massingill and defense counsel could review the impeachment evidence. The following morning, the defense rested without Massingill testifying.

At the hearing on the motion for new trial, defense counsel testified that he saw nothing to be gained from Massingill testifying, but that Massingill fully understood his right to testify and was specifically advised that whether to testify was his decision. Initially, at the hearing, counsel denied that he had quantified for Massingill the chances of success at trial based on whether or not Massingill testified.

Massingill, however, presented an audio recording of a phone call between himself and defense counsel in which defense counsel, at Massingill's request, quantified the likely chance of success depending on whether or not Massingill testified. The trial court specifically found defense counsel's testimony to be credible and, considering the totality of Massingill's recorded conversation and the court's instructions, found that Massingill understood it was his decision whether to testify.

As an initial matter, contrary to Massingill's argument, defense counsel did object to the impeachment evidence. Moreover, the trial court specifically found credible counsel's testimony that counsel had fully advised Massingill of his right to testify and the strategic implications of his choice, and we must accept that finding because it is not clearly erroneous.[13] Accordingly, Massingill has not shown that his counsel's performance was deficient.

(c) Massingill contends that trial counsel provided ineffective assistance when he called Kenneth Smith as a defense witness.

---

[13] See *Finch v. State*, 287 Ga. App. 319, 321 (1) (b) (651 SE2d 478) (2007) (holding that defendant had not shown trial court's finding of effective assistance was clearly erroneous when evidence supported trial court's finding that defendant was aware of his right to testify, but made no request to testify).

"Strategic decisions regarding what witnesses to call after consultation with the client are virtually unchallengeable and do not amount to ineffective assistance."[14]

At trial, Smith testified that even after their breakup, Massingill and S. C. got along very well. Smith also testified that Massingill had put a GPS tracking device on S. C.'s vehicle prior to the incident at the church.

At the hearing on the motion for new trial, defense counsel explained that he interviewed Smith prior to trial, and he was aware that Massingill had talked to Smith about placing a tracking device on S. C.'s vehicle. Defense counsel nevertheless decided to call Smith as a witness because Massingill was "adamant" that he do so and because Smith provided some positive testimony. Counsel ultimately regretted his decision to call Smith.

Of course, "[e]ffectiveness is not judged by hindsight or by the result."[15] It is not a ground for reversal that defense counsel made a strategic decision that the positive aspects of Smith's testimony outweighed the negative aspects, and the fact

---

[14] *Browne v. State*, 261 Ga. App. 648, 649 (2) (583 SE2d 496) (2003).

[15] *Carmichael v. State*, 353 Ga. App. 64, 74 (3) (b) (836 SE2d 184) (2019) (punctuation and footnote omitted).

that, in hindsight, Massingill and trial counsel now question "the efficacy of the chosen defense strategy cannot establish ineffective assistance."[16]

(d) Lastly, Massingill contends generally that his trial counsel was ineffective because he failed to properly prepare for the trial and failed to investigate civil matters that were pending between Massingill and S. C.

"[N]o specified amount of time exists on which a counsel must spend in preparation for trial; each situation must be judged upon its own circumstances and in light of its own degree of complexity."[17]

Massingill forged a warranty deed to the house where he and S. C. had lived and which she owned, leading to a civil lawsuit between them. At the hearing on Massingill's motion for new trial, defense counsel testified that he reviewed the complaint, answer, and depositions from the civil matter; discussed the case with Massingill; visited the scene; familiarized himself with the back story; and interviewed witnesses. Because Massingill does not point to any instances in the

---

[16] *Williams v. State*, 292 Ga. 844, 854 (3) (h) (742 SE2d 445) (2013) (citation and punctuation omitted).

[17] *English v. State*, 260 Ga. App. 620, 625 (4) (a) (580 SE2d 351) (2003) (citation and punctuation omitted).

record that reflect a lack of preparedness on the part of his defense counsel, he has not shown that he received ineffective assistance of counsel.[18]

2. At the close of the State's case, Massingill moved for a directed verdict of acquittal, which was denied. Although Massingill enumerates as error the denial of his motion for directed verdict, he provides no citation of authority nor argument in support of this enumeration. Accordingly, Massingill has abandoned this claim of error.[19]

3. Massingill argues that the trial court erred in failing to strike potential juror M. C. for cause.

As set forth above, Massingill used a peremptory challenge against potential juror M. C.; he did not request to strike M. C. for cause. Because Massingill "did not

---

[18] See *Berry v. State*, 262 Ga. App. 375, 377 (2) (b) (585 SE2d 679) (2003) (holding that claim of ineffective assistance had no merit when defendant did not point to any instances reflecting a lack of preparation).

[19] See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

make a request to strike the juror for cause, the issue was waived for ordinary appellate review."[20]

Massingill only enumerates as error the trial court's failure to strike potential juror M. C. However, in his brief, he argues that "two potential jurors showed inherent biases[.]" Massingill may not use his brief to expand his enumeration of errors "by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors."[21] But even if Massingill could expand his enumeration of errors, to the extent that he challenges the trial court's failure to strike juror R. P., this claim is also waived because Massingill made no request to strike R. P.[22]

Finally, even if these claims were not waived, the cases relied on by Massingill, *Kim v. Walls*,[23] and *Cannon v. State*,[24] are distinguishable. In *Kim*, the potential juror, a nurse, had worked with the defendant doctor and disclosed that her relationship

---

[20] See *Hill v. State*, 310 Ga. 180, 186 (3) (a) (850 SE2d 110) (2020). Furthermore, plain-error review is not available for this issue. See id.

[21] *Wallace v. State*, 303 Ga. 34, 38 (2) (810 SE2d 93) (2018) (citation and punctuation omitted).

[22] See *Hill*, 310 Ga. at 186 (3) (a).

[23] 275 Ga. 177 (563 SE2d 847) (2002).

[24] 250 Ga. App. 777 (552 SE2d 922) (2001), overruled in part on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a) n. 3 (820 SE2d 640) (2018).

with the doctor would "probably" color her view of the case.[25] Although the potential juror stated that she could set aside her personal feelings, she also stated that she did not view the parties equally or neutrally because she knew and had worked with the defendant.[26] In *Cannon*, a potential juror was friends with the victim and the defendant, had had a detailed conversation with the victim about the crime, and expressed doubts about her ability to be impartial.[27] Here, in contrast to the potential jurors in *Kim* and *Cannon*, neither M. C. nor R. P. had any personal relationship with any party, and neither indicated that she could not be impartial. Accordingly, this claim is unpersuasive.

4. Massingill argues that the State committed misconduct by equating him with a hit man.

During its closing argument, in response to Massingill's argument that the State had failed to prove stalking because there was no evidence that the GPS tracking device was turned on or worked, the State argued:

---

[25] *Kim*, 275 Ga. at 177.

[26] Id.

[27] *Cannon*, 250 Ga. App. at 778 (1).

We'll use [M. C.] from our earlier jury pool. Her husband hires a hit man to kill her. They catch the hit man before he actually shoots her. Does it mean he didn't intend to shoot her? Of course not. Should we let her get shot and killed so we can be like, ["]Oh, look. He really did mean to shoot and kill her.["?] And we watched it all happen because that's what you gotta do.

We let . . . her drive off with [the tracking device] on her car. How long do we have to wait? How much surveillance? Is it one place she goes? Is it ten? Is it four months? Is it a year? . . . . Just because we caught him before he had the opportunity to find out where that woman was living does not mean that that wasn't his intention all along.

Because there was no objection at trial, this issue has been waived on appeal.[28]

Massingill also summarily argues that his trial counsel's failure to object was ineffective assistance. However, counsel testified at the hearing on the motion for new trial that he elected not to object to the State's argument because he believed the State's attorney had "gone off the rails" and he chose to "let her keep going." Because

---

[28] See *Wyatt v. State*, 267 Ga. 860, 864 (2) (a) (485 SE2d 470) (1997); see also *Gates v. State*, 298 Ga. 324, 329 (4) (781 SE2d 772) (2016) (holding that plain-error review is not available for alleged improper remarks made during closing argument).

trial counsel made a reasonable strategic decision not to object to the State's closing argument, Massingill has not shown ineffective assistance.[29]

5. Finally, Massingill argues that the cumulative effect of these errors deprived him of a fair trial.

To establish cumulative error, Massingill must show that (1) at least two errors were committed in the course of the trial, and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied him a fundamentally fair trial.[30] As Massingill has failed to show at least two errors, he has not established cumulative error.[31]

*Judgment affirmed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[29] See *Wheeler v. State*, 290 Ga. 817, 821 (6) (c) (725 SE2d 580) (2012).

[30] *Flood v. State*, 311 Ga. 800, 808 (2) (d) (860 SE2d 731) (2021).

[31] See id.